IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-HC-2258-FL

| | |
|---|---|
| JULE C. FUTRELL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| WARDEN THOMAS SCARANTINO, ) | |
| ) | |
| Respondent. ) | |

This matter is before the court on respondent's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 10). Petitioner did not respond, and in this posture, the issues are ripe for ruling.

## STATEMENT OF THE CASE

Petitioner, a federal inmate proceeding pro se, commenced this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges his disciplinary conviction for attempted introduction of drugs into the prison facility. He argues the following violated his due process rights: 1) his request for call a witness was ignored or denied; 2) the delay in his hearing was unnecessary and unreasonable; 3) the alleged drugs were never tested; 4) he was subjected to sanctions not instituted by the disciplinary hearing officer ("DHO"); and 5) it was improper for the same officer that handled the investigation also authored the disciplinary report. Petitioner seeks expungement and dismissal of the charge from his record and return of 82 days of good time credit.

Respondent filed the instant motion for summary judgment arguing the DHO proceedings complied with petitioner's due process rights, the evidence before the DHO supported a finding

that petitioner committed the prohibited act, the sanctions imposed were appropriate and consistent with federal regulations, and the loss of privileges and increased monitoring do not constitute deprivation of a protected liberty interest. In support, respondent relies on a memorandum of law, statement of material facts, and appendix comprising the following: 1) declaration of Dorethea Orr ("Orr"), a paralegal specialist at the Federal Correctional Complex in Butner, North Carolina; 2) petitioner's SENTRY sentencing monitoring computation data; 3) petitioner's SENTRY inmate disciplinary data; 4) incident reports dated February 24 and March 2, 2022; 5) Federal Bureau of Investigation ("FBI") declining action; 6) petitioner's SENTRY incident report history; 7) notice of disciplinary hearing; and 8) DHO report. The court provided petitioner notice of the motion and instructions for responding, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). As noted above, petitioner did not respond to the motion.

## STATEMENT OF FACTS

Except as otherwise noted below, the court recounts the facts in the light most favorable to petitioner.[1] Petitioner, a federal inmate, was housed at the Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield")at the time he was convicted of the disciplinary offense at issue in this action.[2] (Pet. (DE 1) at 2; Orr Decl. (DE 13-1) at 1 ¶ 2).[3,4] The Special

---

[1] Petitioner submitted a verified petition in this matter. **Error! Main Document Only.**Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (holding verified complaints based on personal knowledge are competent summary judgment evidence).

[2] Petitioner filed his habeas petition in this court because he is currently incarcerated at the Federal Correctional Complex in Butner, North Carolina.

[3] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

[4] Where multiple paragraphs share the same numbering throughout Orr's declaration, the court provides both the page and paragraph number in citations thereto.

Investigative Service ("SIS") conducted an investigation into petitioner's monitored calls and emails to an outside party indicating petitioner was orchestrating the introduction of narcotics into MCFP Springfield by mail sent by an outside party addressed to another unidentified inmate. (Orr Decl. (DE 13-1) at 2–5 ¶ 6; Resp't Attach. 6 (DE 13-7) at 1–2). On December 17, 2021, an SIS technician recovered a package addressed to the unidentified inmate indicated in the phone calls, and the package contained 28 concealed buprenorphine (Suboxone) strips. (Orr Decl. (DE 13-1) at 2–5 ¶ 6; Resp't Attach. 6 (DE 13-7) at 1–2). On February 24, 2022, petitioner was issued an incident report charging him with attempted introduction of drugs or alcohol in violation of Federal Bureau of Prison Policy 111A. (Orr Decl. (DE 13-1) at 2 ¶ 6; Resp't Attach. 3 (DE 13-4) at 1-2). However, the February 24 incident report was suspended pending referral to the FBI for prosecution, which was declined on March 1, 2022. (Orr Decl. (DE 13-1) at 2 ¶ 6; Resp't Attach. 4 (DE 13-5) at 1–2). On March 2, 2022, the incident report was rewritten and delivered to petitioner. (Orr Decl. (DE 13-1) at 3 ¶ 6; Resp't Attach. 6 (DE 13-7) at 1–2).

On March 3, 2022, the Unit Discipline Committee reviewed the incident report and referred the charge to the institution's DHO for hearing. (Orr Decl. (DE 13-1) at 5 ¶ 8; Resp't Attach. 6 (DE 13-7) at 3). That same day, petitioner was provided copies of the "Notice of Discipline Hearing Before the [DHO]" and "Inmate Rights at Discipline Hearing. (Orr Decl. (DE 13-1) at 5 ¶ 9; Resp't Attach. 7 (DE 13-8) at 1–2). Petitioner signed the notice of hearing indicating he declined to have a staff representative at the hearing and he did not wish to call any witnesses. (Orr Decl. (DE 13-1) at 6 ¶ 9; Resp't Attach. 7 (DE 13-8) at 1).

3

On March 8, 2022, the DHO held a hearing on the rewritten March 2 incident report. (Orr Decl. (DE 13-1) at 6 ¶ 10; Resp't Attach. 6 (DE 13-7) at 1–2). The DHO hearing record provides the following account regarding the proceedings:

> You were advised of your rights before the [DHO], and you stated you understood your rights. You did not request a staff representative or witnesses. You did not submit any documentary evidence during the disciplinary process.
>
> The DHO took administrative notice of a delay. The delay was due to a SIS Investigation and subsequent referral to an outside agency for possible prosecution. The incident report was released for Administrative Processing March 1, 2022. You raised no issue about the delay. The DHO could find no way the delay hindered your ability to prepare you defense. Your UDC was held in the time frame prescribed by policy.
>
> In accordance with PS 5270.09, and 'A' added to the charge is considered the same as committing the prohibited act and means Aiding, Abetting, or Making Plans to commit the act. The DHO finds you committed the Code #111(A) prohibited act.
>
> The finding is based on the following:
>
> The incident report which states, an investigation, concluded on 2-23-22/8:45am, revealed [petitioner] arranged the introduction of 28 buprenorphine strips through mail. On 10-8-21 11:53am[, petitioner] called [an outside party]. [The outside party] stated, "The sneaker is too thin, I can[']t." [Petitioner] stated, "the whatchamacallit is still, the rims is still a go. But, and we can get books. Directly from there." During a phone call on 10-12-21 8:07pm, [petitioner] and [the outside party] discussed the books and "the whatchamacallit." [Petitioner] stated, "When you looked at the sneakers it wasn't big enough, so, I know the other situation will work." [The outside party] asked, "So you can get a situation from on place and bring it to them?" [Petitioner] stated, "Naw, with that place I would just go in there and get it. And then, like uh, sure what we was talking about with Barnes and Noble. And Barnes and Noble said they didn't do it. I'm sure they will" and "As long as it comes from a bookstore, it's good." During a call on 10-16-21 7:00pm, [the outside party] stated, "I don't think Barnes and Noble do it." [Petitioner] stated, "Naw they don't, but I'm saying the spot where you already went does." During a phone call on 10-25-21 11:31am, [petitioner] asked, "When you get back, how many of the whatchamacallits you think you gonna do?" [The outside party] stated, "A dub" (twenty). In a text forwarding email to [the outside party] on 10-29-21 6:27pm, [petitioner] wrote, "Yo we need to get it going the real bread is in the rims here." In an email to [the outside party] on 10-30-21 7:50pm, [petitioner] wrote, "Yeah once you get that going the $$ gonna come crazy. I

4

know down here its lit." During a phone call on 11-13-21 6:53pm, [petitioner stated], "See if you can uh, round up whatever you can find, the same situation, if your man ain't came back from D-R. Cause the numbers a lot less, but, in the volume it'll still add up to the same thing." At 8:42pm [petitioner] sent an email to [the outside party stating], "Yo and jump on google before you go to sleep to see if they got a small local spot." During a phone call on 11-14-21 1:34pm [petitioner] stated to [the outside party], "I want to get to the uh, to the other situations and its just the volume. I gotta get the volume right." During a phone call placed on 11-16-21 9:30pm, [petitioner] stated, "And the other situations, I'll try at least thirty or forty." In an email sent to [the outside party] on 11-18-21 10:26pm, [petitioner] wrote, "Yo try and look into that other spot tomorrow. If they don[']t do it just get their info and go from there. I'll send you the info." During [a] phone call placed on 11-19-21 5:38pm, [petitioner] stated, "Try to see, like a fifty piece." [The outside party] stated, ["]I'm a umm, make sure shorty's pregnant." During a phone call on 11-20-21 7:32pm, [the outside party] stated, ["]Trying to umm, fuckin umm, get back so I can send that school bus out.["] During a phone call on 11-21-21 3:12pm, [the outside party] stated, ["]I'm gonna go down to this spot tomorrow. Peep this situation out. You know what I'm sayin, try to throw something in the air.["] In an email to [the outside party] on 11-22-21 10:14am, [petitioner] wrote, ["]Also, check out that other spot. Do a test run. Then look for a text in a few with the info.["] On 11-22-21 7:03pm, an email was sent from [a] Unit 2-2 inmate . . . account through a text forwarding service to [the outside party stating], ["]yo here is the . . . I'll call later. (Reg. number and initials of [unidentified] inmate housed on Unit 2-2 with [petitioner])[. Three] minutes later, [petitioner] emailed [the outside party], ["]Yo [unidentified inmate] wanted me to tell you to call his chick. [I'll] call you in a few. The # should have come already.["] On 11-26-21 10:52am, [petitioner] called [the outside party] and asked, ["]You gonna shoot by that placed today?["] [The outside party] stated, ["]Yeah, I just um, I just got um, a subscription for thirty.["] On 12-5-21 10:45am, [petitioner] called [the outside party] and stated, ["]Try to grab as many new uh, whatchamacallits if you can so while you there you can go ahead and bust one more move.["] On 12-8-21 4[:]30pm, [petitioner] called [the outside party], who stated, ["]I'm a try to do a dub or thirties.["] At 8:07pm, [petitioner] called [the outside party] and told him to check your phone and see if you got that information. For when you got by the wholesaler place and should be in two emails, like, probably like, I don't know, two weeks ago or a week and change ago and Yeah, for the information I sent you. They want the dub. At 11:21pm[, petitioner] called [the outside party] and asked, ["]Were you able to look up that information?[" ] Petitioner] stated[, "]it is [illegible]. Yeah, uh, [illegible]." The outside party] explained he cannot find the information. [Petitioner] explained he will get the information to him tomorrow so you can go by there and see what's up[.] Once I send you, um, the company information, just go ahead and do what you got to do.["] On 12-9-21 10:08am, [petitioner] placed a phone call to [the outside party]. [The outside party] explained he likely deleted the information. [The outside party]

5

stated, ["]Tryin to see how these motherfuckin thirty's is gonna look on this truck.["] [Petitioner] then gave [the outside party the unidentified inmate's] name and register number under the guise of instructing [the outside party] to place $200 on [the unidentified inmate's] account, then stated, ["]But that's uh, you already know what that is. So. That's in case motherfuckers is, is on it. But yeah, so when you go, yeah, the thirty's gon, that shit gonna look good. That shit gonna sell quick too. You seen how fast the other one sold.["] [The outside party] then informed [petitioner] it will be '28.' At 5:30pm, [petitioner] called [the outside party] and again gave him [the unidentified inmate's] name and register number. On 12-17-21, at 9:15am, I recovered a package addressed to [the unidentified inmate] from Open Door Bookstore, 128 Jay St, Schenectady, NY. The package contained a book, 'Plain Bad Heroines' and a book, "A Room with a View.' 28 orange Buprenorphine strips were hidden inside the book, 'Plain Bad Heroines.' This bookstore is located 4/10 of a mile from [the outside party's] address, . . . , NY. Bookstore staff stated a Black male purchased the book "Plain Bad Heroines," and left the store with the book. Later that day, he returned to the store with the book, the purchased the book, "A Room with a View." The individual then requested both books be mailed to [the unidentified inmate].

The DHO considered photographs from the bookstore showing the male individual purchasing and returning the books that were directed to be mailed to [the unidentified inmate].

The DHO considered the Chain of Custody and photographs of the incoming package for [the unidentified inmate] from Open Door Bookstore, 128 Jay Street, Schenectady, NY, which contained the books titled, "Plain Bad Heroines" and "A Room with a View" and 28 Suboxone strips. 27 with the "A8" markings and one with "N8."

The DHO considered a memo from SIS Tech Krebs stating on 12-21-21 at approximately 9:05am, I made telephone contact with Open Door Bookstore, located in Schenectady, NY, regarding the books mailed to [the unidentified inmate]. I explained to them that a book in the package contained narcotics. They requested the titled of the books, and the date of mailing for the purpose of her looking into the purchase history. At 9:05am they called be back and informed me an individual walked into the store in the morning and purchased the larger book, "Plain Bad Heroines," and left the store with the book. Later that day, the individual returned to the store with the book, the purchased the smaller book, "A Room with a View." The individual then requested both books be mailed to [the unidentified inmate] at MCFP Springfield. They explained video was reviewed for that day, and observed this individual in the store. The individual was described as a Black male wearing a baseball cap, and a COVID mask. The store manager, emailed two screenshots of this individual to me. The manager informed me she downloaded the video of this individual to a thumb drive.

6

The DHO considered a memo from SIS Tech Krebs stating, [o]n 12-18-21 at approximately 10:15am, I escorted [petitioner] to the 3-1 Unit Team office for the purpose of conducting an interview. Officer B. Toler was present for the interview. I explained the purpose of this interview, which is regarding information indication [petitioner] directed an outside person to mail Suboxone strips to [the unidentified inmate]. [Petitioner] declined to speak with me about this matter.

The DHO considered a memo from Pharmacist Mann stating the strips were buprenorphine/naloxone (Suboxone) 8mg/2mg sublingual film. This is a generic product manufactured by Alvogen, a generic product we do not carry at USMCFP Springfield.

The DHO considered a print out of google maps showing the Bookstore and [the outside party's] address[es] were .4 miles apart. The DHO also considered an advanced phone number search of phone number . . . is linked to [the outside party] at [a specified address].

The DHO considered the SIS report which states in part: On 12-10-21, staff monitored suspicious information in phone calls placed by [petitioner], and informed SIS they believed he is having narcotics sent to [the unidentified inmate]. SIS reviewed the called, determined [petitioner] is having items mailed to [the unidentified inmate] in a book, and informed Mail Room staff to be on the lookout for it. On December 17, 2021, at approximately 9:15 am, SIS received a package addressed to [the unidentified inmate] from the mail room. The package was from . . . "Open Door Book Store." The package contained 2 soft cover books. Upon searching one of the books, 28 buprenorphine/naloxone strips were found hidden inside the spine of a book. The SIS report documented each phone call and summary of call and each email mentioned in section 11. The phone records and email records confirm these calls and emails occurred as stated in the incident report.

The DHO considered you made no statement in your defense to SIS, the investigating lieutenant, and UDC. A person not guilty of such a crime would likely [make] a defense before seeing the DHO.

The DHO considered your statement to the DHO stating, "I just got here on 10-7. He took bits and pieces from the phone calls. They have calls from 10-8 until 12-17 and tied them together. I have no drug charges. He didn't use a credit card. How do you know? There is no evidence. I put money on another inmate's account and used the guy's email. That is all I did."

> In deciding the case, the DHO considered your defense that SIS took bits and pieces from phone calls and emails over a two month period and tied them together. You claimed all you are guilty of is putting money on another inmate's account and using a guy's email address. You also claimed that [the outside party] does not live at [the provided address]. However, you did not provide any exculpatory evidence to back this claim. According to a SIS special search [the outside party's] mobile phone number is tied to that address, which is .4 miles from the Bookstore. You also were recorded telling [the outside party] to go to a local bookstore and provided him [the unidentified inmate's] name and number in email records. This information was passed onto [the outside party] on December 9 and the package arrived on December 17. You claim they took bits and pieces of the conversations from 10-8 until 12-17 and tied them together, while this is true the phone calls were all tied together and discuss the planning process; however, it is the more recent calls that link the small bookstore to the books sent to [the unidentified inmate]. There is some evidence to support you made plans to have drugs introduced into the facility. The some evidence is the IR, which was backed by phone calls, emails, all which were documented in the SIS investigative report. Additionally, photographs of the incoming package supported the IR. Therefore, greater weight was given to this evidence. Your defense was given lesser weight as you did not provide any exculpatory evidence contrary to the incident report. The DHO finds you committed the Code #111(A) prohibited act.

(Resp't Attach. 8 (DE 13-9) at 2–5). Petitioner was sanctioned with loss of 41 days good time credit, disallowance of 41 days non-vested good time credit, and six months loss of email, phone, and visitation privileges. (Orr. Decl. (DE 13-1) at 7 ¶ 14; Resp't Attach. 8 (DE 13-9) at 5).

Petitioner received a copy of the DHO's final report on April 8, 2022, and was advised of his appeal rights. (Orr. Decl. (DE 13-1) at 8 ¶ 16; Resp't Attach. 8 (DE 13-9) at 6).

## COURT'S DISCUSSION

A.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact.

8

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must then affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.   Analysis

Petitioner challenges the disciplinary proceedings and resulting sanctions in this case. The Due Process Clause of the Fourteenth Amendment mandates several procedural safeguards before an inmate may be punished for violating prison disciplinary rules with the loss of a protected liberty interest. Wolff v. McDonnell, 418 U.S. 539, 557–58 (1974). Under the Wolff standard, an inmate is entitled to the following: 1) written notice of the charges at least 24 hours in advance of the hearing; 2) a written statement by the fact finders as to the evidence relied on and reasons for disciplinary action; and 3) the right to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Id. at 564–66; see also Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019). Decisions by a disciplinary board pass scrutiny under the Due Process Clause if there is some evidence in the record to support the conclusions. Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). Finally, the disciplinary decision must be made by an impartial adjudicator. Wolff, 418 U.S. at 570–71.

These procedural safeguards, however, only apply if the petitioner experiences the loss of a protected liberty interest, such as the loss of gain time credits or other recognized interests. See Wolff, 418 U.S. at 557; Prieto v. Clarke, 780 F.3d 245, 248–49 (4th Cir. 2015). Thus, petitioner

must show 1) "that there is a state statute, regulation, or policy that creates such a liberty interest," and 2) "that the denial of such an interest imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Shaw v. Foreman, 59 F.4th 121, 127 (4th Cir. 2023).

As noted above, petitioner argues his due process rights were violated when: 1) his request for call a witness was ignored or denied; 2) the delay in his hearing was unnecessary and unreasonable; 3) the alleged drugs were never tested; 4) he was subjected to sanctions not instituted by the DHO; and 5) it was improper for the same officer that handled the investigation also authored the disciplinary report. To the extent petitioner argues his request to present a witness at the hearing was ignored or denied, such an argument is belied by undisputed record evidence showing petitioner signed a notice of hearing indicating he did not wish to call any witnesses. (See Orr Decl. (DE 13-1) at 6 ¶ 9; Resp't Attach. 7 (DE 13-8) at 1); see also Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purpose of ruling on a motion for summary judgment."); Harris v. Pittman, 927 F.3d 266, 276 (4th Cir. 2019) ("[Summary judgment] is proper under Scott only when there is evidence . . . of undisputed authenticity that shows some material element of the plaintiff's account to be blatantly and demonstrably false"). Petitioner does not dispute the authenticity of his signature in the notice of hearing. Further, regarding the delay in hearing due to the referral to the FBI, the undisputed evidence shows the delay did not hinder petitioner's ability to provide a defense, and petitioner did not raise the issue of the delay during the hearing. (See Resp't Attach. 8 (DE 13-9) at 2–5).

10

Next, the court addresses petitioner's argument that the contraband was not drug tested. The DHO relied on a pharmacist's identification of the contraband as Suboxone, which satisfies the "some evidence" standard to support the DHO's findings. See Walpole, 472 U.S. at 454–55. Petitioner also asserts that the additional sanctions of random urinalysis and enhanced email monitoring were applied to him although such sanctions were not provided by the DHO. However, such restrictions are not protected liberty interests under the Fourteenth Amendment. See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 461 (1989) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)); see also Desper v. Clarke, 1 F.4th 236, 246 (4th Cir. 2021); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997); Mayberry v. Starr, 44 F. App'x 679, 680 (6th Cir. 2002). Lastly, petitioner argues his due process rights were violated because a disciplinary report may not be written by the same officer that handled the investigation, which he asserts happened in the underlying disciplinary proceedings. But the undisputed evidence shows the investigation and reporting employee that authored the incident report were two different individuals. (Resp't Attach. 6 (DE 13-6) at 2, 4). Accordingly, respondent is entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, the court GRANTS respondent's motion for summary judgment (DE 10). A certificate of appealability is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 30th day of September, 2025.

LOUISE W. FLANAGAN
United States District Judge